

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

October 2, 1990

Honorable Thomas B. Sehon            Opinion No. JM-1227
District Attorney
Falls County Courthouse              Re: Questions regarding ar-
P. O. Box 413                        ticle III, section 52-a, of
Marlin, Texas 76661                  the Texas Constitution
                                     (RQ-1779)

Dear Mr. Sehon:

You ask several questions about a program administered by the Texas Department of Commerce. Specifically, you ask about a project proposed by the City of Marlin. See generally 10 T.A.C. § 178.13. Your questions arise because of the following aspect of the proposed transaction:

> [I]f Marlin enters into this arrangement it would be required to contractually agree with T.D.O.C. that it would take responsibility for the creation of the jobs by the private entity. If the private entity fails or otherwise is unable to provide the jobs as stated in its application, the contract between T.D.O.C. and Marlin would provide that Marlin would be responsible for repaying a pro rata portion of the loan based upon the actual number of qualified jobs which were created. The program is thus structured as an indirect loan from T.D.O.C. to the private entity. However, Marlin would be required in effect to guarantee the performance of the private entity. . . . The obligation of Marlin, if it should ever become due and owing, would be a general obligation of the city for which it would be required to levy taxes, as the City has no other funds available to make the repayment. Marlin would be unable to pay the debt out of current-year funds.

You ask first whether article III, sections 51 and 52, and article XI, section 3, prohibit the city from becoming, in effect, a guarantor for a private entity.

Article III, section 51, prohibits the legislature from authorizing a city to grant public money to a private entity. Article III, section 52, of the Texas Constitution prohibits the legislature from authorizing a city to lend its credit to a private entity. Article XI, section 3, provides in part.

> No county, city, or other municipal corp-
> oration shall hereafter become a subscriber
> to the capital of any private corporation or
> association, or make any appropriation or
> donation to the same, or in anywise loan its
> credit.

The proposal you describe would require the City of Marlin to serve as a guarantor of the obligations of a private entity. On its face, such an arrangement would violate the prohibitions against a city's lending its credit to a private entity.

In 1987, however, the voters amended the Texas Constitution by adding the following provision:

> Notwithstanding any other provision of
> this constitution, the legislature may
> provide for the creation of programs and the
> making of loans and grants of public money,
> other than money otherwise dedicated by this
> constitution to use for a different purpose,
> for the public purposes of development and
> diversification of the economy of the state,
> the elimination of unemployment or under-
> employment in the state, the stimulation of
> agricultural innovation, the fostering of the
> growth of enterprises based on agriculture,
> or the development or expansion of trans-
> portation or commerce in the state. Any
> bonds or other obligations of a county,
> municipality, or other political subdivision
> of the state that are issued for the purpose
> of making loans or grants in connection with
> a program authorized by the legislature under
> this section and that are payable from ad
> valorem taxes must be approved by a vote of
> the majority of the registered voters of

> the county, municipality, or political sub-
> division voting on the issue. An enabling
> law enacted by the legislature in anticipa-
> tion of the adoption of this amendment is not
> void because of its anticipatory character.

Tex. Const. art. III, § 52-a. We think it is clear that section 52-a was intended by the legislature, and by the voters who adopted it, to create exceptions to the pre-existing constitutional prohibitions on the lending of public credit. See House Research Organization's Special Legislative Report, 1987 Constitutional Amendments and Referendum Propositions, August 17, 1987 (specifically mentioning the provisions of article III, sections 51 and 52, and article XI, section 3, as constitutional impediments that section 52-a was intended to overcome); see also Texas Legislative Council Information Report No. 87-2, Analyses of Proposed Constitutional Amendments and Referenda Appearing on the November 3, 1987 Ballot, September 1987. Article III, section 52-a, however, does not itself expand the authority of cities to lend credit; it merely authorizes the legislature to do so. Consequently, enabling legislation would be necessary to authorize the transaction in question.

You suggest that section 481.191(a) of the Government Code authorizes the transaction. That section, which deals with the authority of the Department of Commerce, provides:

> The department shall, under the federal
> Omnibus Budget Reconciliation Act of 1981
> . . . administer the state's allocation of
> federal funds provided under the community
> development block grant nonentitlement
> program authorized by Title I of the Housing
> and Community Development Act of 1974 (42
> U.S.C. section 5301 et seq.).

The subject matter of section 481.191(a) of the Government Code is the Department of Commerce. It mentions neither cities nor the lending of credit. We think that if the legislature intended to expand the authority of cities to lend credit pursuant to article III, section 52-a, it would, at the very least, specifically mention cities' lending of credit, or section 52-a. See, e.g., V.T.C.S. arts. 46d-2, 725d, 835s, 1182m, 6674v.2 (all making specific reference to article III, section 52-a).

Also, the substance of section 481.191(a) significantly predates article III, section 52-a. Section 481.191 was

moved into the Government Code in 1989 as part of a non-substantive recodification. Acts 1989, 71st Leg., ch. 4, § 3.01, at 235. It was derived from former article 4413(301), V.T.C.S., which was enacted in 1987. Article 4413(301) was adopted as part of a bill creating the Department of Commerce. Acts 1987, 70th Leg., ch. 374, at 1823. That bill transferred the administration of the community development block grant program from the Department of Community Affairs to the newly-created Department of Commerce. Id. § 1 (section 2.003(b) of the new act); see Attorney General Opinion H-1276 (1978) (Department of Community Affairs has authority to administer program established by the Federal Housing and Community Development Act of 1974). Neither the nonsubstantive recodification nor the transfer of authority from the Department of Community Affairs to the Department of Commerce suggests an implicit intent on the part of the legislature to exercise its authority under article III, section 52-a.

For the reasons set out above, we conclude that section 481.191(a) does not expand the authority of cities to lend credit to private entities. You have not suggested to us any other statute that would authorize the city to participate in the proposed transaction.

## S U M M A R Y

Section 481.191 of the Government Code is not enabling legislation for article III, section 52-a, of the Texas Constitution.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

p. 6524

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk and William Walker
Assistant Attorneys General